## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br>100 F St., N.E.<br>Washington, DC 20549-4628<br><br>          Plaintiff,<br><br>       v.<br><br>CAPITOL DISTRIBUTING, L.L.C. and TERRY M. PHILLIPS,<br><br>2900 Polo Parkway, Suite 200<br>Midlothian, VA 23113<br><br>          Defendants. | CIVIL ACTION<br>NO. _____ |

## COMPLAINT

Plaintiff, the Securities and Exchange Commission (the "Commission") alleges that:

### SUMMARY

1. Capitol Distributing, L.L.C. ("Capitol" or "the Company") aided and abetted violations of the antifraud, financial reporting and recordkeeping provisions of the federal securities laws by Take-Two Interactive Software, Inc. ("Take-Two"), a New York-based publisher and distributor of video and computer games, by providing substantial assistance to Take-Two's fraudulent scheme to inflate reported revenue during fiscal years 2000 and 2001. Terry M. Phillips, the founder, 20 percent owner and principal operator of Capitol, was a control person of Capitol within the meaning of the Securities Exchange Act of 1934 (the "Exchange

Act") Section 20(a) [15 U.S.C. § 78t(a)] during the period that Capitol aided and abetted Take-Two's fraud.

2. Take-Two shipped Capitol hundreds of thousands of video games at the end of reporting periods and fraudulently recorded those shipments as sales. In fact, Capitol only temporarily warehoused (or "parked") the games for Take-Two and had no intention of selling them. To make it appear that Take-Two was receiving payments for the games (thereby legitimizing Take-Two's fraudulent accounting for the transactions as sales), Take-Two provided funds to Capitol or Phillips Land Company ("PLC"), another Phillips-owned entity, which Capitol or PLC used to cover checks they wrote to Take-Two for purported "payments." Capitol then returned the games to Take-Two almost always in subsequent reporting periods. When Capitol returned the games to Take-Two, it provided Take-Two with invoices falsely describing the returned games as "purchases" by Take-Two of "assorted product" from PLC. Take-Two used those invoices to conceal the fact that the games were complete returns of prior "sales." Take-Two fraudulently reported in quarterly and annual reports filed with the Commission approximately $15 million in purported revenue from at least four such parking transactions with Capitol.

3. Unless restrained and enjoined by this Court, Defendant Capitol is likely in the future to commit transactions, acts, practices, and courses of business of a type and object similar to those described herein.

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e) and 78aa]. Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa].

5.   Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce or of the mails, or the facilities of a national securities exchange in connection with the acts, transactions, practices or courses of business alleged herein.

## DEFENDANTS

6.   Capitol is a privately-owned video game distributor organized as a limited liability company under the laws of the Commonwealth of Virginia. It was founded by Terry M. Phillips in 1999. During the relevant period, Capitol had approximately ten employees.

7.   Terry M. Phillips, age 48, is a resident of Midlothian, Virginia. He is the founder, 20 percent owner and principal operator of Capitol and the founder and 50 percent owner of PLC.

## OTHER RELEVANT ENTITIES

8.   Take-Two Interactive Software, Inc. is a New York-based publisher and distributor of video and computer games. In June 2005, Take-Two and four of its then current and former senior officers settled a Federal civil action filed by the Commission in the United States District Court for the Southern District of New York, without admitting or denying the allegations of the Complaint, in connection with its fraudulent scheme to inflate revenue through improper sales and accounting practices, including the parking transactions with Capitol alleged herein and similar parking transactions with other distributors.

9.   Phillips Land Company is a Virginia company 50 percent owned and principally operated by Terry M. Phillips. It has no employees and, in the ordinary course of business, has no involvement in the purchase, sale, or distribution of video games.

## FACTS

### Capitol Aided and Abetted Take-Two's Financial and Accounting Fraud and its Reporting Violations

10. From October 31, 2000 through at least July 31, 2001, Capitol knowingly provided substantial assistance to Take-Two's scheme to inflate reported revenue during fiscal years 2000 and 2001. Capitol accepted several hundred thousand video games from Take-Two with the understanding that it would temporarily warehouse or "park" the games until a subsequent Take-Two reporting period, and then return the games to Take-Two. Take-Two improperly recorded and reported approximately $15 million in revenue associated with these parking transactions. Terry M. Phillips, the founder, 20 percent owner and principal operator of Capitol, controlled Capitol during the period at issue.

11. In furtherance of the scheme, Take-Two provided funds to Capitol or PLC, which were then used to "purchase" the games from Take-Two. Take-Two wired funds to either Capitol or PLC prior to, or within days of, Take-Two receiving from Capitol or PLC funds in approximately the same amounts. Take-Two recorded and reported the funds received from Capitol or PLC as payments for the games.

12. Capitol made no attempt to sell the games. Instead, it warehoused the games for a short time, then returned them to Take-Two with invoices that falsely described the returns as "purchases" of "assorted product" from PLC. Take-Two paid all shipping costs associated with the transactions, including the costs of returning the games.

*October 31, 2000 Transaction*

13. Capitol and Take-Two began discussing the parking arrangement as early as July 2000. E-mails between two Capitol employees dated July 26, 2000 stated that the games slated

for parking "will come to Capital then [sic] shipped back to Take-Two for distribution," that "[w]e are buying it from [Take-Two] and then shipping it back to them," and that "[w]e are just going to park goods."

14. On October 31, 2000, the last day of Take-Two's fiscal year, Capitol accepted shipment of 230,000 video games from Take-Two with the understanding that Capitol would park them for a short time and then return the shipment to Take-Two. Take-Two improperly recorded $5.4 million as revenue from the shipment – the most revenue from a single sale Take-Two had recognized up to that time.

15. The games shipped to Capitol were selected by Take-Two based on Take-Two's warehouse inventory at the time; Capitol had no input into or choice about the games it accepted.

16. Capitol made no effort to sell the games. Instead, Capitol returned all 230,000 games to Take-Two over the next two reporting periods; each time using invoices purportedly from PLC that Capitol employees created. These invoices falsely described the games as purchases by Take-Two of "assorted product" with no reference to specific titles or descriptions.

17. No funds were transferred between the parties until December 20, 2000, when Take-Two wired $2,557,239 to PLC. Six days later, PLC sent Take-Two a check for $2,557,137 as alleged payment for the games associated with the October 31, 2000 transaction.

*February 28, 2001 Transaction*

18. On February 28, 2001, Capitol accepted a second shipment of approximately 175,000 video games from Take-Two. Take-Two improperly recorded the transaction as a $4.6 million sale – second in revenue only to the October 31, 2000 transaction in Take-Two's history up to that time. Again, all 175,000 games were subsequently returned to Take-Two with PLC invoices that falsely described the returned games as a purchase by Take-Two of "assorted

product" from PLC. Capitol again used funds provided by Take-Two to purportedly pay for the games. Take-Two wired Capitol $4,594,100 on April 26, 2001 and Capitol sent Take-Two a check for the same amount the next day.

*April 27, 2001 Transaction*

19.  On April 27, 2001, three days before the end of Take-Two's second fiscal quarter, Capitol accepted approximately 55,000 games from Take-Two. Take-Two recorded $1.76 million as revenue from the purported sale. After the end of the quarter, Capitol returned all these games to Take-Two.

*July 31, 2001 Transaction*

20.  On July 31, 2001, the last day of Take-Two's third fiscal quarter, Capitol accepted a shipment of more than 85,000 games from Take-Two. Take-Two recorded more than $3 million as revenue from the purported sale. After the end of the quarter, Capitol returned all these games to Take-Two.

21.  By its conduct described above, Capitol knowingly provided substantial assistance in Take-Two's filing with the Commission financial statements containing material misstatements and omissions in annual and quarterly reports including its: (1) October 31, 2000 Form 10-K; (2) April 30, 2001 Form 10-Q; (3) July 31, 2001 Form 10-Q; and (4) October 31, 2001 Form 10-K.

22.  By its conduct described above, Capitol knowingly provided substantial assistance to Take-Two in furtherance of its scheme to falsify its books and records and in its failure for fiscal years 2000 and 2001 to make and keep accurate books, records, and accounts.

## FIRST CLAIM

Aiding and Abetting Violations of Exchange Act
Section 10(b) and Rule 10b-5 Thereunder
(Capitol)

23.     The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 22 above.

24.     By reason of the conduct described above, Take-Two and its senior management directly or indirectly, by the use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange in connection with the purchase or sale of securities employed devices, schemes or artifices to defraud; made untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices or courses of business which operated as a fraud or deceit in violation of the antifraud provisions of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

25.     Section 20(e) of the Exchange Act [15 U.S.C. § 78t(e)] provides that any person that knowingly provides substantial assistance to another person in violation of a provision of the Exchange Act, or of any rule or regulation issued under the Exchange Act, shall be deemed to be in violation of such provision to the same extent as the person to whom such assistance is provided.

26.     By reason of its conduct described above, Defendant Capitol knowingly provided substantial assistance to Take-Two in violation of Exchange Act Section 10(b) and Rule 10b-5 thereunder.

## SECOND CLAIM

Aiding and Abetting Violations of Exchange Act
Section 13(a) and Rules 12b-20, 13a-1 and 13a-13 Thereunder
(Capitol)

27. The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 22 above.

28. During and in furtherance of the fraudulent scheme described above, Take-Two filed with the Commission materially false and misleading annual reports on Forms 10-K for the fiscal years ended October 31, 2000 and October 31, 2001 in violation of the financial reporting provisions of the Exchange Act and materially false and misleading quarterly reports on Forms 10-Q for the quarters ended April 30, 2001 and July 31, 2001 in violation of the financial reporting provisions of the Exchange Act, Section 13(a) [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 thereunder [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13].

29. By reason of its conduct described above, Defendant Capitol knowingly provided substantial assistance to Take-Two in violation of Exchange Act Section 13(a) and Exchange Act Rules 12b-20, 13a-1 and 13a-13.

## THIRD CLAIM

Aiding and Abetting Violations of
Exchange Act Section 13(b)(2)(A)
(Capitol)

30. The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 22 above.

31. During and in furtherance of the fraudulent scheme described above, Take-Two failed to make and keep books, records and accounts which accurately and fairly reflected its

transactions and disposition of its assets in violation of the books and records provision of the Exchange Act, Section 13(b)(2)(A) [15 U.S.C. § 78m(b)(2)(A)].

32.     By reason of its conduct described above, Defendant Capitol knowingly provided substantial assistance to Take-Two in violation of Exchange Act Section 13(b)(2)(A).

## FOURTH CLAIM

Aiding and Abetting Violations of Exchange Act Rule 13b2-1
(Capitol)

33.     The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 22 above.

34.     Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] makes it unlawful for a person to, directly or indirectly, falsify or cause to be falsified any book, record, or account subject to Section 13(b)(2)(A) of the Exchange Act.  During and in furtherance of the fraudulent scheme described above, Take-Two and its senior management falsified and/or caused to be falsified the company's books, records, and accounts in violation of Rule 13b2-1.

35.     By reason of the conduct described above, Defendant Capitol knowingly provided substantial assistance to Take-Two in violation of Exchange Act Rule 13b2-1.

## FIFTH CLAIM

Exchange Act Section 20(a) Control Person Liability
(Phillips)

36.     The Commission re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 22 above.

37.     Exchange Act Section 20(a) [15 U.S.C. § 78t(a)] provides that any person who, directly or indirectly, controls any person liable under any provision of the Exchange Act, or of any rule or regulation issued under the Exchange Act, shall also be liable jointly and severally

with and to the same extent as the controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

38. Defendant Phillips was a control person of Capitol within the meaning of Exchange Act Section 20(a). As a control person, Defendant Phillips is liable for Capitol's aiding and abetting Take-Two's violations of Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; Exchange Act Section 13(a) [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13]; Exchange Act Section 13(b)(2)(A) [15 U.S.C. § 78m(b)(2)(A)]; and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that this Court:

### I.

### Permanent Injunctive Relief
(Capitol)

A. Enter an Order permanently enjoining Defendant Capitol from violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder;

B. Enter an Order permanently enjoining Defendant Capitol from aiding and abetting violations of Section 13(a) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1 and 13a-13;

C. Enter an Order permanently enjoining Defendant Capitol from aiding and abetting violations of Section 13(b)(2)(A) of the Exchange Act; and

D.  Enter an Order permanently enjoining Defendant Capitol from aiding and abetting violations of Rule 13b2-1 of the Exchange Act.

## II.

### Civil Money Penalties
(Phillips)

Enter an Order directing Defendant Phillips to pay a civil penalty pursuant to Section 21(d) of the Exchange Act.

Dated:  May 2, 2007
        Washington, DC

Respectfully submitted,

_____
Mark Kreitman (D.C. Bar No. 260828)
Christopher R. Conte
J. David Fielder
David B. Witherspoon
Attorneys for Plaintiff

SECURITIES AND EXCHANGE
  COMMISSION
100 F Street, N.E.
Mail Stop 4628
Washington, DC 20549
E-Mail: KreitmanM@SEC.GOV
Phone: (202) 551-4484
Fax:   (202) 772-9236

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Securities and Exchange Commission

## DEFENDANTS

Capitol Distributing, L.L.C.
Terry M. Phillips

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __88888__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

### (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Mark Kreitman, SEC, 100 F Street, N.E., Washington, DC 20549,
(202) 551-4484
Christopher R. Conte, SEC, 100 F Street, N.E., Washington, DC 20549,
(202) 551-4834
James D. Fielder, SEC, 100 F Street, N.E., Washington, DC 20549,
(202) 551-4499
David B. Witherspoon, SEC, 100 F Street, N.E., Washington, DC 20549, (202) 551-4445

### ATTORNEYS (IF KNOWN)

Geoffrey A. Berkin (Capitol Distributing, L.L.C. and Terry M. Phillips)
4573 Willis Avenue
Suite 201
Sherman Oaks, CA 91403
(818) 386-2930

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ⦿ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. *Antitrust*
- ☐ 410 Antitrust

### ○ B. *Personal Injury/ Malpractice*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. *Administrative Agency Review*
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff))
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ⦿ E. *General Civil (Other)* OR ○ F. *Pro Se General Civil*

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☒ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Securities Exchange Act Sections 10(b), 13(a), 13(b)(2)(A) and Rules thereunder. Case concerns accounting fraud and SEC reporting violations.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint
JURY DEMAND:  YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE May 2, 2007    SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.